595 So.2d 331 (1992)
Donald Edward KELLAMS & Harriet Naomie Kellams, Plaintiffs-Appellants,
v.
Jeannine W. OLIVER, State Farm Mutual Automobile Insurance Company, Department of Transportation and Development, State of Louisiana (First Supp.) & Parish of Lafayette (Supp. Petition) Defendants-Appellees.
No. 90-831.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1992.
Writ Denied April 20, 1992.
Gibbens & Blackwell, John Blackwell, New Iberia, for plaintiffs-appellants.
Melissa J. Reardon, Michael Breaux, Lafayette, for defendant-appellee State Farm.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Richard J. Petre, Jr., Lafayette, for Oliver.
Andrus, Boudreaux, Lemoine & Tonore, Vance R. Andrus, Lafayette, for the State.
Before DOUCET, YELVERTON and KNOLL, JJ.
DOUCET, Judge.
This suit against a provider of uninsured motorist coverage arose out of an accident between a vehicle owned and operated by Jeannine Oliver and an unknown vehicle operated by an unknown driver. Robin M. Kellams, daughter of the plaintiffs and a guest passenger in the Oliver vehicle, was killed in the accident. Her parents sued Ms. Oliver's uninsured motorist carrier, State Farm Mutual Automobile Insurance Co. (State Farm), among others. State Farm filed a Motion for Summary Judgment on the grounds that the absence of physical contact between the vehicles precludes coverage under the policy. The court granted summary judgment and dismissed the plaintiffs' claims against State Farm.
The plaintiffs do not dispute the lack of a material issue of fact remaining before the court. However, they argue that defendants are not entitled to summary judgment as a matter of law.
On July 26, 1987, Jeannine Oliver was driving southeast in the right lane of U.S. Highway 90 in Lafayette Parish. Riding with her were Colleen Watson and Robin Kellams. Ms. Oliver moved into the left lane, passed another vehicle, and returned to the right lane. At that point, an unknown blue car, which had been following Ms. Oliver quite closely, pulled up beside her. The driver made an obscene gesture and pulled his vehicle into the right lane ahead of Ms. Oliver's vehicle. The driver of the blue car slammed on his brakes, then *332 pulled swiftly away. Ms. Oliver, fearing she would hit the blue car, tried to take evasive action. However, she lost control of her vehicle which left the roadway and flipped over. The guest passengers were ejected. Robin Kellams died as a result of her injuries. The blue car did not stop and was never identified.
In its Motion for Summary Judgment, State Farm alleged that there was no physical contact between the vehicles. The Kellams admit that this is true. Since Ms. Oliver's insurance policy provided coverage for an accident involving "a `hit-and-run' land motor vehicle whose owner or driver remains unknown and which strikes" the insured, State Farm contended that contact between the two vehicles was required for recovery under the provisions of the policy.
On appeal, the plaintiffs argue that the policy requirement of physical contact is in conflict with the U.M. statute. Alternatively, they argue that a relaxed standard should be used to determine whether physical contact occurred. The Fourth Circuit in D'Angelo v. Doe, 535 So.2d 31, 32-33 (La.App. 4th Cir.1988), writ denied, 537 So.2d 1163 (La.1989) dealt, correctly in our opinion, with similar arguments, saying:
"Additionally, there is no legislative mandate that a motorist purchase uninsured motorist coverage. LSA-R.S. 22:1406(D)(1)(a). Where the legislature allows an insured to lower the limits of his uninsured coverage or reject it totally, we cannot conclude that restrictions contractually placed on that coverage are against public policy. See Carter v. Leonard, 413 So.2d 244 (La.App. 4th Cir. 1982).
An insurance policy is a contract and the rules governing the interpretation of written agreements apply to insurance contracts. Hemel v. State Farm Mut. Auto Ins. Co., 211 La. 95, 29 So.2d 483 (1947); Percy v. Safeguard Ins. Co., 460 So.2d 724 (La.App. 3rd Cir.1984). Thus, an insurance contract is the law between the parties and every stipulation therein must be construed as written. Harmon v. Lumbermens Mutual Casualty Co., 247 La. 263, 170 So.2d 646 (1965). Insurers may limit their liability where such limitation is clearly and expressly set forth in the contract and is not violative of public policy. Percy v. Safeguard Ins. Co., 460 So.2d 724 (La.App. 3rd Cir. 1984); Bowab v. St. Paul Fire and Marine Insurance Co., 152 So.2d 66 (La. App. 3rd Cir.1963), writ denied, 153 So.2d 881 (1963). Courts must give legal effect to the provisions of an insurance policy according to the true intent of the parties, which is determined by the wording of the policy when its provisions are clear and unambiguous and do not lead to absurd consequences. LSA-C.C. Art. 2046; Gulf Bldg. Services Inc. v. Travelers Indem. Co., 435 So.2d 477 (La.App. 4th Cir.1983).
Plaintiffs argue that interpreting the language to exclude coverage under the hit-and-run provision of the contract leads to absurd consequences. It is alleged that this interpretation requires a driver to allow himself to be involved in a collision in order to recover under his uninsured motorist coverage. We find that the clear terms of the contract dictate that coverage exists under limited conditions. One such condition is that physical contact occur in a hit-and-run accident. This does not lead to absurd consequences, but rather reflects the bargain made by the parties who are bound by the language of the contract.
Plaintiffs further argue that a theory of constructive contact should apply where no fraud or collusion exist. The words of the contract are clear and explicit. In the absence of physical contact there is no coverage under the uninsured motorist provisions of the policy. There are no provisions for constructive contact. We find the parties are bound by the terms of the agreement as the words are clear and lead to no absurd consequences. LSA-C.C. Art. 2046."
We also note that the cases cited by the plaintiffs in support of a relaxed standard of physical contact are factually inapposite to the case before the court. In those cases actual contact between the "miss-and-run" *333 vehicle and another vehicle began a chain of contact ending in the damage to the plaintiff, or debris falling from the "miss-and-run" vehicle hit the plaintiffs resulting in damage. See also: Bonis v. Commercial Union Ins. Co., 482 So.2d 1017 (La.App. 3rd Cir.1986).
Accordingly, we find that the insurance contract precludes coverage where there is no evidence of physical contact between the insured vehicle and the "miss-and-run" vehicle. As a result, State Farm was entitled to summary judgment as a matter of law. As a result of this finding, we need not consider the plaintiffs' remaining assignment of error regarding the necessity of proving whether the "miss-and-run" vehicle was not insured. Therefore, the judgment of the trial court is affirmed. Costs are to be paid by the plaintiffs.
AFFIRMED.
KNOLL, J., dissents and assigns reasons.
KNOLL, Judge, dissenting.
For the following reasons, I respectfully dissent, finding the State Farm Mutual Insurance policy provision at issue in conflict with Louisiana public policy considerations of our U.M. statute. Under the facts of the case sub judice, I find that enforcement of State Farm's prerequisite of physical contact between the vehicles violates the long held objective of Louisiana's uninsured motorist statute to promote full recovery for damages by innocent accident victims.
The majority relies upon D'Angelo v. Doe, 535 So.2d 31 (La.App.1988), a Fourth Circuit case in which writs were denied. Writ denials by the Louisiana Supreme Court do not carry the same precedential weight as cases decided after the granting of the writ, Colonial Pipeline Company v. Agerton, 289 So.2d 93 (La.1974); therefore, we are not bound to follow them. In my view, the position of the majority is so strongly against public policy considerations and the purpose of U.M. coverage, that I would not follow the progeny that D'Angelo is based upon, as well as the D'Angelo case.
The U.M. statute does not exclude "miss and run" accidents from the ambit of its intended purpose. On the contrary, with regard to property damage, LSA-R.S. 22:1406(D)(1)(d) and (D)(1)(d)(i) now state, in pertinent part:
"... The coverage provided under this Subsection shall not provide protection for any of the following:
(i) Damage where there is no actual physical contact between the covered motor vehicle and an uninsured motor vehicle, unless the injured party can show, by an independent and disinterested witness, that the injury was the result of the actions of the driver of another vehicle whose identity is unknown or who is uninsured or underinsured." (Emphasis added.)
The Legislature's inclusion of a cause of action to recover property damage in the "miss and run" accident is stronger evidence that the public policy considerations of the U.M. statute were intended to include full recovery for bodily injury to innocent victims, such as the decedent in the case sub judice. To provide full recovery for property damage in "miss and run" accidents and not bodily injury would be inconsistent with Louisiana's public policy considerations of the U.M. statute.
Moreover, fraud is not an issue in the present case. It is undisputed by State Farm that decedent's death was the result of the action of another vehicle whose identity is unknown.
For these reasons, I would reverse the summary judgment which dismissed State Farm, finding its policy provision contrary to public policy considerations of the U.M. statute.